2017 PA Super 405

| | |
|---|---|
| WELLS FARGO BANK, N.A., AS THE TRUSTEE FOR THE REGISTERED HOLDERS OF THE GE BUSINESS LOAN TRUST CERTIFICATES, SERIES 2005-2 | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| PREMIER HOTELS GROUP, LLC | |
| Appellant | No. 941 MDA 2016 |

Appeal from the Order Entered May 10, 2016
In the Court of Common Pleas of Lackawanna County
Civil Division at No: 2015-05776

BEFORE: LAZARUS, J., STABILE, J., and DUBOW, J.

OPINION BY STABILE, J.: **FILED DECEMBER 21, 2017**

Appellant, Premier Hotels Group, LLC ("Premier"), appeals from the May 10, 2016 order entered in the Court of Common Pleas of Lackawanna County, granting summary judgment in favor of Appellee, Wells Fargo Bank, N.A., as the Trustee for the registered holders of the GE Business Loan Trust Certificates, Series 2005-2 ("Wells Fargo"). Following review, we reverse.

The record reveals that in September 2005 Premier executed a promissory note (the "Note") and mortgage (the "Mortgage") in favor of General Electric Capital Corporation ("GECC") in the amount of $4,400,000.00 for property located at 200 Tigue Street, Dunmore, Pennsylvania ("the

Property"). GECC assigned the Mortgage and other loan documents to Wells Fargo by assignment recorded on June 27, 2012.

In its capacity as Trustee, Wells Fargo filed a complaint on September 30, 2015, alleging that Premier was in default under the loan documents; that Premier had sold the Property in response to a foreclosure action initiated by Wells Fargo in federal court and had remitted the proceeds of the sale to Wells Fargo; that the proceeds were insufficient to satisfy the Note in full; and that Wells Fargo was entitled to collect from Premier the sum of $1,772,957.37[1] plus per diem interest in the amount of $275.50 from August 5, 2015 forward. Complaint, 9/30/15, at ¶¶ 6-16. In Count I of the complaint, styled "Breach of Note," Wells Fargo incorporated its allegations of default and alleged it was entitled to recover the amounts due as well as attorney fees and other expenses as agreed upon under the terms of the Note. *Id.* at ¶¶ 17-24.

Premier filed its answer and new matter on December 2, 2015. Premier denied it was in default; acknowledged it sold the property and remitted the proceeds in exchange for which the Mortgage was released; denied the proceeds were insufficient to satisfy the Note in full; and denied any principal, interest, fees or other balance was due to Wells Fargo. Answer and New Matter, 12/2/15, at ¶¶ 6-24. Premier also raised several affirmative defenses.

_____

[1] The sum claimed consisted of $1,260,246.64 of unpaid principal, 4446,174.78 in accrued interest, and $66,535.95 in accrued late fees and return items fees.

*Id.* at ¶¶ 25-41. However, from the record it appears that Premier did not endorse its answer and new matter with a notice to plead, and Wells Fargo did not file a reply to new matter. Therefore, the pleadings were closed at that time.

Ten weeks later, on February 12, 2016, Wells Fargo filed a motion for summary judgment and a memorandum in support, contending there was "no genuine issue of material fact as to the enforceability of the Note, [Premier's] breach, and the obligations due the Trustee, nor does [Premier's] Answer raise any issue of material fact." Motion for Summary Judgment, 2/12/16, at 4. Attached to the motion was an affidavit of Wells Fargo Assistant Vice President Mark Farr ("Farr Affidavit"). In the Farr Affidavit, Farr represented that the relevant electronic loan payment records were voluminous and that he based the sums claimed in the complaint on his review of those documents. Farr Affidavit at ¶¶ 41-42. Farr further represented that the summary of sums claimed was "prepared from 'duplicates' (*see* Pa.R.Evid. 1001(e)) of the electronic loan records previously produced in discovery." *Id.* at ¶ 43.[2] He

---

[2] The record does not reflect any discovery undertaken by the parties prior to Wells Fargo's filing of its summary judgment motion. Therefore, we can only surmise that the mention of discovery in the Farr Affidavit was either made in error or was a reference to discovery in a similar action between the parties filed in the United States District Court for the Middle District of Pennsylvania in which that court denied Wells Fargo's motion for summary judgment, concluding there were genuine issues of material fact as to whether Premier defaulted under the Mortgage or the Note. *See Wells Fargo Bank, N.A. v.*

suggested that "[t]he summary should be admissible as the best evidence thereof pursuant to Pa.R.Evid. 1002 and as relevant under Pa.R.Evid. 402." *Id.* at ¶¶ 43-44.

Premier filed a response to Wells Fargo's summary judgment motion contending, *inter alia*, that it was current with its payments until Wells Fargo refused to accept them and that no event of default occurred as alleged by Wells Fargo. Premier's Response to Motion for Summary Judgment, 3/29/16, at ¶¶ 1, 4-9. Premier presented evidence filed in federal court in response to Well Fargo's motion for summary judgment, including the declaration of Premier's general manager, Umesh Matta, explaining that Wells Fargo claimed Premier was in default when Wells Fargo discovered that Premier was disputing real estate taxes on the Property. *Id.* at Exhibit "A;" *see also* Exhibit "5" (Fanucci Sworn Declaration) explaining that Premier rightfully contested taxes, negotiated a payment plan with the Lackawanna Tax Claim Bureau, made payments to satisfy all amounts due, and did so without the Property ever being scheduled for tax sale.[3] Premier also claimed that the

---

*Premier Hotel Group, LLC*, 2015 WL 404549, at *8-9 (M.D. Pa. January 29, 2015).

[3] Under the terms of the Mortgage, Premier was authorized to "withhold payment of any tax . . . in connection with a good faith dispute over the obligation to pay, so long as [Wells Fargo's] interest in the Property is not jeopardized." Mortgage, 9/26/05, at 3 (Taxes and Liens—Right to Contest.)

- 4 -

motion for summary judgment should fail because it was based solely on the testimonial Farr Affidavit in violation of the ***Nanty-Glo*** rule.[4]  ***Id.*** at ¶¶ 1, 10-11.  "The ***Nanty-Glo*** rule means 'the party moving for summary judgment may not rest solely upon its own testimonial affidavits or depositions, or those of its witnesses, to establish the non-existence of genuine issue of material fact.'"  ***DeArmitt v. New York Life Ins. Co.***, 73 A.3d 578, 595 (Pa. Super. 2013) (quoting ***Dudley v. USX Corp.***, 606 A.2d 916, 918 (Pa. Super. 1992)).

Following oral argument on May 10, 2016, the trial court granted summary judgment in favor of Wells Fargo.  Order, 5/10/16, at 1.  The order signed by the trial judge was the proposed order submitted by Wells Fargo and simply provided that Wells Fargo's "[m]otion is GRANTED and summary judgment is entered in favor of [Wells Fargo] and against [Premier] in the amount of $1,772,959.37 as of August 5, 2015, together with per diem interest at $275.50 from and after August 5, 2015, together with attorney's fees and costs." ***Id.***  This timely appeal followed.

By letter dated August 5, 2016, this Court advised the trial court that a Rule 1925(a) opinion (or statement in lieu of) was missing from the record. The trial court was directed to resubmit the record or submit a supplemental record with the missing item by August 19, 2016.  The trial court did not comply with that instruction.

_____

[4] ***Borough of Nanty-Glo v. American Surety Co. of New York***, 163 A. 523 (Pa. 1932).

On July 10, 2017, we remanded the case to the trial court for preparation of a Rule 1925(a) opinion within thirty days of this Court's directive. The trial court filed its opinion on September 11, 2017.[5] In its opinion, the trial court explained that Wells Fargo established there were no material facts in dispute and, therefore, the court granted the motion for summary judgment. Trial Court Rule 1925(a) Opinion, 9/11/17, at 2 (unnumbered). Specifically, the trial court determined that the Note and Mortgage were valid and that Premier unambiguously and unconditionally promised to repay the Note in full under the terms of that document. *Id.* at 3 (unnumbered). The trial court found that various defaults or events of default under the loan documents had occurred, as reflected in correspondence from Wells Fargo's counsel dated October 29, 2013 and December 4, 2013. *Id.* In light of the events of default, Wells Fargo advised Premier that it was accelerating Premier's obligations under the Note. *Id.* In response to a complaint in mortgage foreclosure filed by Wells Fargo against Premier in the United States District Court for the Middle District of Pennsylvania, Premier sold the real property subject to the mortgage. Those proceeds were accepted by Wells Fargo but were insufficient to satisfy the Note in full. Consequently, the loan was determined to be in default and Wells

---

[5] In our July 10, 2017 memorandum remanding for a Rule 1925(a) opinion, we offered the parties the opportunity to file supplemental briefs within thirty days of the trial court's issuance of an opinion. Wells Fargo elected to do so while Premier did not.

Fargo had standing to enforce Premier's obligations under the Note by virtue of an assignment. *Id.* at 3-4 (unnumbered). The trial court concluded:

> Based on this [c]ourt's determination the loan and documentation were valid, the loan was in default, and that the trustee was the appropriate person to [enforce] the obligation under the note. As such there remains no material issues of material fact and summary judgment was appropriately granted in favor of appellee, Wells Fargo.

*Id.* at 4 (unnumbered).[6]

Premier asks us to consider four issues in this appeal:

A. Whether the trial court erred in granting summary judgment in favor of [Wells Fargo] based solely upon Wells Fargo's own testimonial affidavit in violation of Pennsylvania's *Nanty-Glo* Rule?

B. Whether the trial court erred in granting summary judgment in favor of Wells Fargo when there are disputed issues of material fact, including the amount purportedly owed to Wells Fargo that a federal court found in a related action precluded summary judgment?

C. Whether the trial court erred in granting summary judgment in favor of Wells Fargo prior to the exchange of any discovery in the case?

D. Whether the trial court erred in granting summary judgment in favor of Wells Fargo by failing to apply Missouri law?

Premier's Brief at 4.

_____

[6] Although the trial court recognized the original principal amount of the Note was $4,400,000 and recognized Premier's promise to pay full amount of the Note, the trial court did not discuss the basis for determining the amount of the judgment entered against Premier in the trial court's May 10, 2016 order, *i.e.*, $1,772,957.37 plus per diem interest of $275.50 from August 5, 2015, plus attorney fees and costs. *See id.* at 1-4 (unnumbered).

As a challenge to the grant of summary judgment, we must "determine whether the trial court abused its discretion or committed an error of law, and our scope of review is plenary." ***Rodriguez v. Kravco Simon Co.***, 111 A.3d 1191, 1193 (Pa. Super. 2015) (citation and brackets omitted). Further,

> we apply the same standard as the trial court, reviewing all the evidence of record to determine whether there exists a genuine issue of material fact. We view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. Only where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to a judgment as a matter of law will summary judgment be entered.

***DeArmitt***, 73 A.3d at 585 (internal quotations, citations and brackets omitted). "[T]he party who brought the motion has the burden of proving that no genuine issue of fact exists. All doubts as to the existence of a genuine issue of material fact are to be resolved against the granting of summary judgment." ***Id.*** at 595.

Premier's first three issues are interrelated. Therefore, we shall address them collectively.

In its Complaint, Wells Fargo alleged that Premier was in default under the loan documents and failed to make payments when they were due. Complaint at ¶¶ 6 and 7. In response, Premier denied allegations of default as legal conclusions and specifically denied it failed to make payments when due. Answer at ¶¶ 6 and 7. Wells Fargo alleged it advised Premier of its default and Wells Fargo's election to accelerate payments by letters of October

29, 2013 and December 4, 2013, respectively, both of which were attached as exhibits to the Complaint. Complaint at ¶¶ 9 and 10. As the letters reveal, Wells Fargo complained that real estate taxes on the property were delinquent, constituting an event of default (October 29, 2013 letter). Further, Premier failed to make its November 1, 2013 payment and remained delinquent on property taxes constituting events of default and warranting acceleration of the sums due under the Note (December 4, 2013 letter). Premier denied the averments of Paragraphs 9 and 10 of the Complaint as based on written documents that speak for themselves. Further, Premier specifically denied the allegations as legal conclusions. Answer to Complaint at ¶¶ 9 and 10.

As noted previously, the parties did not undertake discovery in the ten weeks that elapsed between the filing of Premier's answer and the filing of Wells Fargo's motion for summary judgment. Therefore, there are no discovery materials of record to support or refute Wells Fargo's allegations or Premier's specific denials.

In its summary judgment motion, Wells Fargo asserted that "[t]he undisputed facts establish that [Premier] breached the unambiguous terms and conditions of the [Note], by failing to pay the amounts due to [Wells Fargo] when due." Motion for Summary Judgment, 2/12/16, at ¶ 1. In response, Premier denied the assertions and countered that it "timely made

payments until Wells Fargo refused to accept payments." Response to Summary Judgment Motion, 3/29/16, at ¶ 1.

Wells Fargo backs its allegations of default with a "Statement of Undisputed Material Facts," which is a document upon which Wells Fargo relies and incorporates by reference in its Memorandum of Law in support of its summary judgment motion. With the exception of Paragraphs 1 through 4, which identify the parties and note the dates of filing of the complaint and answer, the Statement of Undisputed Material Facts is based almost exclusively on statements that appear in the Farr Affidavit as the basis for concluding that Premier was in default and owed Wells Fargo a sum in excess of $1.77 million dollars.

Premier filed a response to the "purported" statement, disputing Farr's assertions regarding events of default and reiterating that Premier made repeated attempts to make payments, attempts that were rejected by Wells Fargo. Premier's Response to Wells Fargo's "Purported 'Undisputed Material Facts,'" 4/12/16, at ¶¶ 13-29.

Based on our review of the record, and recognizing that doubts as to the existence of genuine issues of material fact must be resolved against Wells Fargo as the moving party, we find the trial court erred in concluding there were no genuine issues of material fact. We do not take issue with the trial court's determination that the loan documents are valid and enforceable. However, when we look at the record in a light most favorable to Premier as

- 10 -

the non-moving party, it is clear the only support in the record for finding events of default is contained in the Farr Affidavit. While the trial court does not mention the affidavit in its Rule 1925(a) opinion, it appears the trial court accepted the assertions in the affidavit while ignoring Premier's counter-assertions that its attempted payments were rejected by Wells Fargo and similarly ignoring the terms of the Mortgage that authorized Premier to contest tax liability in good faith. Moreover, the only support for the sums claimed by Wells Fargo appear in the Farr Affidavit. Therefore, we conclude that the trial court's apparent reliance on the affidavit as the basis for concluding that no genuine issues of material fact exist is, as Premier argues, a violation of the **Nanty-Glo** rule and requires that we reverse the order granting summary judgment and remand for further proceedings.

Consideration of Premier's fourth issue is moot in light of our reversal of summary judgment. Nevertheless, we note that Missouri law, which governs both the Note and Mortgage by virtue of the express terms of those documents, requires proof to a "reasonable certainty" of the existence of a balance due and owing. **Fannie Mae v. Bostwick**, 414 S.W.3d 521, 527 (Mo. Ct. App. 2013). The "proof" of the claimed amount here was based on the Farr Affidavit and its affiant's assertion that he determined the amounts due based on his review of the voluminous loan payment records. Farr Affidavit

at ¶¶ 41-42.[7]  We agree with Premier's contention that the unsupported statements in the Farr Affidavit fall woefully short of providing proof to a reasonable certainty as to the existence of amounts claimed to be owed.

Order reversed.  Case remanded.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/21/2017

_____

[7] As mentioned above, the affidavit includes a statement that the summary of amounts due was prepared from records produced in discovery.  Again, there was no discovery undertaken in the case before us.  **See** n.2, **supra**.